IN RE ESTATE OF HARRY W. CARMAN, DECEASED. EDWARD AXMANN ET AL., APPELLANTS AND CROSS-APPELLEES, V. AMANDA CARMAN, APPELLEE AND CROSS-APPELLANT.

327 N.W.2d 611

Filed December 17, 1982.  No. 44419.

John S. Mingus of Mingus & Mingus, for appellants.

Tye, Worlock, Tye, Taylor & Hopkins, for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CAPORALE, J.

In this appeal the appellants, Edward Axmann, Elaine Dobish, and Shirley Tesmer, grandnephew and grandnieces of the deceased Harry W. Carman, challenge the District Court's computation of the decedent's augmented estate. The appellee, Amanda Carman, surviving spouse of the decedent, cross-appeals, also claiming error in the District Court's computation of the augmented estate and further in its determination that there was no adequate showing of need for a supplemental family allowance to her. We affirm in part and reverse in part.

In general, the deceased's last will and testament devised to Mrs. Carman a life estate in certain described real estate. All the rest, residue, and remainder of the real estate was devised, in equal shares, to the appellants. The personal property was bequeathed to one Robert Downey, in trust, to pay the income to Mrs. Carman and to distribute the corpus, upon her death, to the appellants, in equal shares.

Mrs. Carman elected to take against the will under the provisions of Neb. Rev. Stat. § 30-2313(a) (Reissue 1979), which provides that the surviving spouse has a right to take an elective share of one-third of the augmented estate. Neb. Rev. Stat. § 30-2314 (Reissue 1979), so far as material here, basically defines the augmented estate as the probate estate, less certain allowances, plus the value of property owned by the spouse at the decedent's death and which would have been includable in the surviving spouse's augmented estate if that spouse had predeceased the decedent, to the extent the owned property was derived by the surviving spouse from the decedent without a full consideration in money or money's worth.

We have in the past stated that a challenge to a

statutory election is tried in this court de novo on the record. *In re Estate of Bergren,* 154 Neb. 289, 47 N.W.2d 582 (1951). We therefore so review the instant matter.

The combined effect of the statutory elective share and augmented estate concepts is intended to protect the surviving spouse of a decedent against donative inter vivos transfers by devices which would deprive the survivor of a "fair share" of the decedent's estate and at the same time prevent the surviving spouse from receiving more than such share by allowing the acceptance of certain transfers and insurance proceeds and also yet elect against the will. Nebraska Probate Code, Part 2, Comments, §§ 30-2313 to 30-2315.

Appellants claim that the augmented estate computation in this case should include all the real estate held by the decedent and appellee as tenants in common, all the items of farm production, and certain other items of personalty. The appellee, on the other hand, urges that only one-half of the tenancy in common real estate, items of farm production, and the other items of personalty should be included; the other one-half being her own and separate estate.

The decedent and appellee were married in November 1959. Decedent was about 50 years old and appellee was about a year younger. It was the first marriage for each; no children were born to the marriage. Appellee and appellants are the decedent's only heirs.

Prior to the marriage appellee had been working as a general cleaning woman in Kearney and continued to do so for a period of time following the marriage. Prior to the marriage the decedent had been engaged in a general farming operation and continued to so be after the marriage. Subsequently, the two parties jointly conducted the farming operation for the duration of the marriage. Various evidence was introduced concerning the work done by appellee in the farming operation. She partici-

pated in such chores as raising chickens, selling eggs and fryers, milking cows, and separating and selling cream. She also purchased some milk cows, fed cattle and hogs, scooped grain, put up hay, and chopped sunflowers, cockleburs, and musk thistles by hand. Additionally, she fixed fence, drove tractors, and stacked hay bales, as well as helping to repair and weld machinery, repairing and reshingling farm buildings, and assisting in the butchering process, including the cutting up of all the meat by herself.

From these facts appellee argues that she did more than merely perform as a farmwife; that in fact she functioned as a partner in the farming operation, or in any event did at least as much as would a hired hand; and, thus, one-half of the items of farm production and other items of personalty were to be treated as being owned by her outright. We, as did the District Court, disagree.

The question becomes whether appellee's labor as above described constitutes a contribution "in money's worth" such that one-half the value of the farm production and jointly acquired personalty should be excluded from the augmented estate and set over to appellee as her own property. Notwithstanding the cases cited to us which adopt that point of view for tax purposes (*Craig v. United States,* 451 F. Supp. 378 (D.S.D. 1978); *In re Estate of Kersten,* 71 Wis. 2d 757, 239 N.W.2d 86 (1976); *Est. of Everett Otte,* 41 T.C.M. 72,076 (P-H 1972)), we adhere to our traditional view that in the absence of an express contract to compensate a spouse for extra and unusual services, no obligation to do so will be implied. See, *Peterson v. Massey,* 155 Neb. 829, 53 N.W.2d 912 (1952); *Brodsky v. Brodsky,* 132 Neb. 659, 272 N.W. 919 (1937). Accordingly, a spouse's labor does not become a contribution "in money's worth" such as to take one-half the value of jointly produced and acquired assets out of the augmented estate computation.

Next, Mrs. Carman argues that her extraordinary labor, coupled with the fact that the realty which she acquired prior to the marriage and owned separately was relied upon by the lender in issuing the purchase money mortgage on the realty acquired by her and decedent as tenants in common, establishes she contributed "in money's worth" to that commonly owned property. She concludes, therefore, that one-half its value should be excluded from the augmented estate computation. Although the District Court agreed with appellee, we do not. The fact that a separately owned asset was relied upon to acquire another asset during marriage does not, in and of itself, change the nature of the contribution by a spouse to the acquisition of a shared asset.

Yet remaining for determination is whether appellee satisfactorily proved her statutorily required need for a supplemental family allowance. The personal representative of the estate initially determined an allowance to appellee in the amount of $6,000, payable in monthly installments of $500. Nine or ten of the twelve payments were made, totaling $4,500 or $5,000 (the record is not clear), and then discontinued because of a lack of cash in the estate. Subsequently, the personal representative filed a petition requesting permission to continue to pay $500 per month during the remaining administration period of the estate; however, the county court granted a maximum of $175 per month. The District Court found that appellee had failed to adequately demonstrate her statutorily required need for a continuation of the family allowance beyond the initial 12-month period. The District Court denied the request for the additional allowance but ruled that the full $6,000 be paid when the assets of the estate so permit. The District Court was correct.

Neb. Rev. Stat. §§ 30-2324 and 30-2325 (Reissue 1979), applicable at the time of the proceedings at issue, provided for an allowance to appellee in the to-

tal amount of $6,000, permissibly payable in periodic installments not exceeding $500 per month for 1 year. This was a specific, vested, and indefeasible statutory right accruing to appellee upon decedent's death. See § 30-2325. Therefore, the remaining balance of the original $6,000 properly determined shall be paid to appellee. We also agree with the District Court that appellee failed to establish the requisite need for any continued allowance beyond the $6,000.

We remand to the Twelfth Judicial District Court, Buffalo County, for judgment consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

CLINTON, J., concurs in the result.